IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CASSANDRA ARNOLD, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 04-1346-JJF |
| | : | |
| RUTH ANN MINNER, STANLEY | : | |
| TAYLOR, PAUL HOWARD, THOMAS | : | |
| CARROLL, LAWRENCE McGUIGAN, | : | |
| CLYDE SAGERS, DAVID E. PIERCE, | : | |
| Jr., JOHN SALAS, STEVEN BOONE, | : | |
| BRANDON RICHARDSON, WILLIAM | : | |
| FAUST, LACHELLE GREEN, RONALD | : | |
| HOSTERMAN, CERTAIN UNKNOWN | : | |
| INDIVIDUAL EMPLOYEES OF THE | : | |
| DEPARTMENT OF CORRECTION, and | : | |
| STATE OF DELAWARE DEPARTMENT | : | |
| OF CORRECTION, | : | |
| | : | |
| Defendants. | : | |

Jeffrey K. Martin, Esquire and Timothy J. Wilson, Esquire of
MARGOLIS EDELSTEIN, Wilmington, Delaware.
Herbert G. Feuerhake, Esquire of THE LAW OFFICE OF HERBERT G.
FEUERHAKE, Wilmington, Delaware.
Attorneys for Plaintiff.

Aaron R. Goldstein, Esquire, Deputy Attorney General, of the
STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware.
Attorney for Defendant Department of Correction.

Richard W. Hubbard, Esquire, Deputy Attorney General, of the
STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware.
Attorney for the Individual Defendants.

## O P I N I O N

June 24 , 2005
Wilmington, Delaware

Farnan, District Judge.

Presently before the Court is a Motion To Dismiss/Summary Judgment Pursuant To Rules 12(b)(1), 12(b)(6) and 56(c) (D.I. 45) filed by Defendant, the State of Delaware Department of Correction (the "DOC"), and a Motion To Dismiss (D.I. 41) filed by the Individual Defendants (collectively, "Defendants"). For the reasons discussed, the Court will grant the Motion To Dismiss/Summary Judgment filed by the DOC. Plaintiff's federal claims against the DOC will be dismissed, and summary judgment will be granted in favor of the DOC on Plaintiff's state law claims. In addition, the Court will grant the Motion To Dismiss filed by the Individual Defendants as it applies to Plaintiff's state law claims alleged in Counts III and IV of Plaintiff's Complaint and deny the Motion To Dismiss as it pertains to Plaintiff's federal claims based on 42 U.S.C. § 1983 alleged in Counts I and II of her Complaint.

## BACKGROUND

### I.   Procedural Background

Plaintiff filed the instant action on October 12, 2004, pursuant to 42 U.S.C. § 1983. Plaintiff's Complaint alleges claims based on violations of the Fourteenth Amendment of the United States Constitution and state law arising in connection with her abduction and assault by an inmate at the Delaware

1

Correctional Center in Symrna, Delaware on July 12, 2004.
Specifically, Plaintiff's Complaint asserts four counts against
the DOC and the Individual Defendants[1], two under Section 1983
(Counts I and II), one under the Delaware Tort Claims Act (Count
III) and one based on her employment contract for a breach of the
common law implied covenant of good faith and fair dealing (Count
IV).  With respect to Plaintiff's Section 1983 claims, Plaintiff
alleges in Count I that her substantive due process rights were
violated by all Defendants under the "state-created danger
doctrine."  In Count II, Plaintiff alleges a claim against the
DOC, Governor Minner, Stanley Taylor, Paul Howard, Thomas
Carroll, Clyde Sagers, David E. Pierce, Jr., Lawrence McGuigan,
Steven Boone and John Salas based on the failure to train and the
maintenance of wrongful policies, practices or customs.  No
discovery has been conducted in this case to date.

In lieu of filing an Answer, Defendants have responded to
Plaintiff's Complaint by filing the instant Motions seeking
dismissal of this action.  The Motions have been fully briefed,
and therefore, the Court will proceed to the merits of the issues
raised by the Motions.

---

[1]    Plaintiff has sued the Individual Defendants in their
individual capacities only and not in their official capacities.
(D.I. 54 at 66).

2

## II.  Factual Background

The following factual background is taken from the allegations of Plaintiff's Complaint.  Plaintiff was employed by the DOC as a Senior Correctional Counselor.  On July 12, 2004, Plaintiff conducted a group counseling session in a prison classroom.  Inmate Scott Miller attended this session.  Miller was serving a 699 year sentence in connection with his convictions for sexually assaulting seven different women.

After the counseling session, Plaintiff proceeded to the administrative corridor in which her office was located.  To get to the administrative corridor, Plaintiff had to proceed from the classroom through three corridors forming a U-shaped configuration.  At the end of one of the corridors, Plaintiff passed through an electronic slide door which was open.  When Plaintiff reached the door leading to the administrative corridor, she noticed that the door was propped open by a piece of wood.  Plaintiff alleges that the door was regularly left open in the manner alleged.  Plaintiff had alerted her superiors on several occasions about the doors being left open in this manner. Plaintiff alleges she did not notice anyone following her as she passed through these open doors.

After proceeding through the open door, Plaintiff walked down the hall and stopped in her office to talk with her

3

colleague Todd Kramer.  Plaintiff then proceeded further down the hall to speak with a secretary.  As Plaintiff returned to her office, Miller, who had apparently been hiding in a bathroom, confronted Plaintiff in the hallway.  Miller possessed and brandished an approximately ten-inch "shank," a homemade knife resembling an ice pick.  Miller grabbed Plaintiff and pushed her into the bathroom.  Plaintiff began screaming, and Miller then put his arm under Plaintiff's chin and lifted her up.  He placed the shank under her throat cutting off her ability to breathe.

Plaintiff's co-workers, Todd Kramer and Dawn Curlett, presumably having heard Plaintiff's screams, responded to the bathroom door, but Miller held it shut while continuing to choke Plaintiff.  Miller yelled through the door that he wanted to speak to Defendant Captain Clyde Sagers.  Miller was told that Defendant Sagers was not available.

Miller then burst through the door and took Plaintiff into the hallway.  Miller saw that Defendant Sagers was in Plaintiff's office.  Plaintiff shouted out, "He's going to kill me, Sagers" in an effort to get Defendant Sagers to respond.  Defendant Sagers came into the hallway, but did not close the door to Plaintiff's office.  Defendant Sagers fumbled with something in his pocket, which Plaintiff believed to be pepper spray.  Miller ran past Defendant Sagers and other DOC personnel on the scene

and led Plaintiff into her office. He barricaded the door by locking it and placing metal file cabinets against the door. Miller then blocked all the windows with notebooks.

After Miller secured Plaintiff's office, he produced a wad of saran wrap, a contraband substance, from his shirt and boot and began to wrap it around the handle of the shank to fortify it. Because Plaintiff believed she might be killed by Miller, she attempted to phone her mother to say good-bye, but the phone lines were not working.

During the more than six-hours that Plaintiff was held by Miller, the Delaware State Police offered assistance, but the DOC refused State Police assistance. At some point, Miller requested to speak with Warden, Thomas Carroll. Plaintiff also requested to speak with Warden Carroll. Warden Carroll refused to speak with Plaintiff or Miller, informing Miller in a one-line letter, near the end of the ordeal, that he would speak to Miller upon the safe release of Plaintiff. Plaintiff alleges that Miller was enraged by Warden Carroll's refusal to talk with him and began stabbing furiously at boxes of papers in the office. Miller then turned his attention to Plaintiff and began to stroke her face and neck. Miller used a shoe lace from a work boot to tie Plaintiff's hands behind her back. Miller then stripped Plaintiff and sexually assaulted her.

In the meantime, DOC officials had established a position in the room adjacent to Plaintiff's office. Concerned that they no longer heard any sounds coming from Plaintiff's office, DOC officials began removing ceiling tiles to obtain a view over the wall into Plaintiff's office. Miller became aware of the sounds of the officials next door and climbed on top of a filing cabinet to investigate the noise. As Miller looked over the wall, he was shot twice by DOC personnel with a .40 caliber handgun. Still alive, Miller lunged toward Plaintiff in an attempt to kill her, but Plaintiff had been able to free her hands. Plaintiff blocked the knife Miller held in his hands, and Miller collapsed onto Plaintiff and died. Miller's body was removed by DOC personnel who had entered through the ceiling. As a result of having been taken hostage and assaulted by Miller, Plaintiff suffers from various post-traumatic symptoms.

## STANDARD OF REVIEW

### I.   Motion To Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).

6

When considering a motion to dismiss, a court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255 (3d Cir. 1994).  The Court is "not required to accept legal conclusions either alleged or inferred from the pleaded facts."  Kost, 1 F.3d at 183. Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45 (1957).  The burden of demonstrating that the plaintiff has failed to state a claim upon which relief may be granted rests on the movant.  Young v. West Coast Industrial Relations Assoc., Inc., 763 F. Supp. 64, 67 (D. Del. 1991) (citations omitted).

## II.  Motion For Summary Judgment

In pertinent part, Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  In

determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. Valhal Corp. v. Sullivan Assocs., Inc., 44 F.3d 195, 200 (3d Cir. 1995).

**DISCUSSION**

I.   **Whether Plaintiff's Claims Under 42 U.S.C. § 1983 Should Be Dismissed**

   A.   Whether the DOC Is Entitled To Immunity Under The Eleventh Amendment As A State Agency, And Is Not A "Person" Subject To Suit Within The Meaning Of Section 1983

By its Motion, the DOC contends that Plaintiff's claims under 42 U.S.C. § 1983 should be dismissed, because the DOC is not a "person" within the meaning of 42 U.S.C. § 1983.  The DOC contends that numerous cases in this district have recognized that the DOC is an arm of the State of Delaware and not a "person" subject to liability under Section 1983.  As an arm of the State, the DOC also contends that it is entitled to immunity under the Eleventh Amendment.

In response, Plaintiff contends that there are genuine issues of material fact regarding whether the DOC can properly be considered an arm of the State entitled to Eleventh Amendment immunity.  Plaintiff points out that no discovery has been taken in this action, and therefore, with the exception of the exhibits

8

attached to the briefing, no factual record has been developed on this issue.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a "violation of a right secured by the Constitution and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted). The Supreme Court has held that neither a State nor its officials acting in their official capacities are "persons" within the meaning of Section 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).

Further, the Eleventh Amendment immunizes an unconsenting State from lawsuits brought in federal court by a citizen of that State or a citizen of another State. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984). A state agency or other entity may be considered an "alter ego" or "arm of the state" such that it is entitled to immunity under the Eleventh Amendment. Christy v. Pennsylvania Turnpike Comm'n, 54 F.3d 1140, 1144 (3d Cir. 1995). In determining whether an entity is properly considered an "alter ego" or "arm of the state," the Third Circuit requires a three pronged inquiry:

> (1) whether, in the event the plaintiff prevails, the payment of the judgment would come from the state (this includes three considerations: whether the payment will come from the state's treasury, whether the agency has sufficient funds to satisfy the judgment, and whether the sovereign has immunized itself from

responsibility for the agency's debts); (2) the status of the agency under state law (this includes four considerations:  how state law treats the agency generally, whether the agency is separately incorporated, whether the agency can sue and be sued in its own right, and whether it is immune from state taxation); and (3) the degree of autonomy the agency enjoys.

Id.  The party asserting Eleventh Amendment immunity bears the burden of production and persuasion with respect to any factual questions impacting its application.  Id.

Both before and after the Third Circuit's decision in Christy, this Court has held that the DOC is not a "person" under Section 1983, but an agency of the State of Delaware entitled to immunity under the Eleventh Amendment.[2]  See e.g. Evans v. Ford, C.A. No. 03-868-KAJ, 2004 WL 2009362, *4 (D. Del. Aug. 25, 2004) (dismissing claim against DOC, because DOC is state agency and DOC did not waive Eleventh Amendment immunity); Hubbard v.

---

[2]    See also Evans v. Probation and Parole, C.A. No. 03-869-KAJ, 2004 WL 2009369, *3 (D. Del. Aug. 25, 2004) (holding that division of probation and parole, a subdivision of DOC was a state agency entitled to immunity); Jackson v. First Correctional Medical Services, C.A. No. 03-1031-SLR, 2004 WL 1730355, *4 (D. Del. July 27, 2004); Turner v. Correctional Medical Services, C.A. No. 03-048-SLR, 2003 WL 22037712, *3 (D. Del. Aug. 20, 2003) (holding that DOC is entitled to immunity); Jolly v. Snyder, C.A. No. 00-041-JJF, 2003 WL 1697539, *6 (D. Del. Mar. 22, 2003); Laboy v. Taylor, C.A. No. 02-248-JJF, 2003 WL 1697542, *1-2 (D. Del. Mar. 21, 2003) (stating that DCC is facility run by DOC, "which is an agency, arm, or instrumentality of the State of Delaware" and thus, entitled to immunity); Church v. Department of Correction, C.A. No. 00-085-SLR, 2002 WL 31927434, *4 (D. Del. Dec. 18, 2002) ("The Department of Correction, as a state agency, is not a person under § 1983.").

Taylor, C.A. No. 00-531-SLR, 2003 WL 1697537, *3 (D. Del. Mar. 28, 2003) ("As an agency of the State, the Department of Correction is thus immune from suit."); Atkinson v. Delaware Department of Corrections, C.A. No. 99-562-JJF, 2001 WL 34368330, *3 (D. Del. June 26, 2001) ("Plaintiff's claims for monetary damages against the Delaware Department of Corrections and against the State Defendants in their official capacity are barred under the Eleventh Amendment."). Plaintiff has not presented the Court with any authority contradicting this line of cases, and neither the State nor the DOC has waived its Eleventh Amendment immunity.[3] See Quern v. Jordan, 440 U.S. 332, 345 (1979) (holding that Section 1983 "does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States"); Ospina v. Department of Corrections, 749 F. Supp. 572, 577 (D. Del. 1991) (holding that State of Delaware has not waived its Eleventh Amendment immunity by operation of 18 Del. C. § 6511). Accordingly, the Court will

---

[3]    Plaintiff does not contend that the DOC has waived its Eleventh Amendment immunity, but only that discovery is required to determine whether the DOC is properly considered an arm of the State.  (D.I. 54 at 66).

grant the DOC's Motion To Dismiss Plaintiff's claims pursuant to 42 U.S.C. § 1983 on the grounds that the DOC is not a "person" within the meaning of Section 1983 and is entitled to Eleventh Amendment immunity as a state agency.

B.    Whether Plaintiff's Claim Under 42 U.S.C. § 1983 Against The Individual Defendants Should Be Dismissed On The Grounds That Plaintiff Cannot Establish A Substantive Due Process Violation Under The State-Created Danger Doctrine

By their Motion, the Individual Defendants contend that Plaintiff cannot establish a Section 1983 violation based on substantive due process grounds under the state-created danger doctrine.  The Individual Defendants contend that the United States Supreme Court has declined to recognize the state-created danger doctrine and has concluded in DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189 (1989) and Collins v. City of Harker Heights, Texas, 503 U.S. 115 (1992), that the Due Process Clause does not create any obligation for a state to protect the safety of its citizens.  The Individual Defendants recognize that the Third Circuit created an exception to this general rule in Kneipp v. Tedder, 95 F.3d 1199 (3d Cir. 1996) for cases in which the State itself has created the danger, but contend that the facts as alleged by Plaintiff do not fall within the Kneipp exception.

Plaintiff responds that she has pled facts sufficient to

12

state a claim under the <u>Kneipp</u> exception, as modified by the
subsequent decision of the Third Circuit, <u>Rivas v. City of
Passaic</u>, 365 F.3d 181 (3d Cir. 2004).  Also, Plaintiff contends
that her claim is cognizable under <u>Eddy v. Virgin Islands Water
and Power Authority</u>, 256 F.3d 204 (3d Cir. 2001), because she has
pled facts sufficient to demonstrate that the Individual
Defendants acted with deliberate indifference and in a
conscience-shocking way to deprive Plaintiff of her right to
liberty.

The alleged constitutional violation underlying Plaintiff's
Section 1983 claim is based on the substantive component of the
Due Process Clause of the Fourteenth Amendment which "protects
individual liberty against 'certain government actions regardless
of the fairness of the procedures used to implement them.'"
<u>Collins</u>, 503 U.S. at 125 (citations omitted).  The Supreme Court
has concluded that a governmental employer does not have an
affirmative duty to provide a government employee with a safe
working environment.  <u>Id.</u> at 126.  As the Supreme Court explained
in <u>Deshaney</u> and reiterated in <u>Collins</u>:

> The Clause is phrased as a limitation on the State's
> power to act, not as a guarantee of certain minimal
> levels of safety and security.  It forbids the State
> itself to deprive individuals of life, liberty, or
> property without 'due process of law,' but its language
> cannot fairly be extended to impose an affirmative
> obligation on the State to ensure that those interests
> do not come to harm through other means.  Nor does

13

history support such an expansive reading of the constitutional text.

Collins, 503 U.S. at 126-127 (citing DeShaney, 489 U.S. at 195).

However, the Third Circuit has interpreted DeShaney to create an exception to the rule.  The exception applies in circumstances where the state has played a part in creating the danger or has done some act to render the employee more vulnerable to the danger.[4]  Kneipp, 95 F.3d at 1207.  To state a constitutional violation based on the state-created danger theory, a plaintiff must show that:  (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for plaintiff's safety; (3) there existed some relationship between the state and plaintiff; and (4) the state actor used his or her authority to create an opportunity that otherwise would not have existed for the harm to occur.  Id. at 1208.  Where, as here, the relationship between the plaintiff and the state is a non-custodial relationship, the plaintiff must show that the state actor acted with willful disregard for plaintiff's safety in a manner that "shocks the conscience."  Rivas, 365 F.3d at 195.  A determination of whether

_____

    [4]    This exception is recognized in other circuits as well, and is based on the following sentence in DeShaney:  "While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him more vulnerable to them."  Kneipp, 95 F.3d at 1205 (citing DeShaney, 489 U.S. at 201).

a state actor's conduct shocks the conscience depends on the facts and circumstances of the case. Id. When the circumstances are urgent such that the state actor is acting in haste or under pressure and without the luxury of a second chance, an "intent to harm" standard of culpability is shocking to the conscience. Id. When there is some urgency such that the state actor cannot proceed in a deliberate manner, the shocks the conscience test can be met by adducing evidence that the actions of the state actor were "grossly negligent or arbitrary, a less onerous standard than an intent-to-harm standard." Id. Stated another way when an official has to act with some urgency, the plaintiff must show that the defendants "'consciously disregarded, not just a substantial risk, but a great risk that serious harm would result. . . .'" Id. at 195-196 (citations omitted).

Considering the allegations of Plaintiff's Complaint in the light most favorable to Plaintiff, the Court cannot conclude at this juncture that Plaintiff's allegations are so woefully inadequate that they fail, beyond doubt, to state a claim. Conley, 355 U.S at 45. Accordingly, the Court concludes that Plaintiff should be given the opportunity to engage in discovery and obtain testimony and documents that may establish a violation of constitutional law based on the state-created danger doctrine formulated in Kneipp/Rivas, and therefore, the Court will deny

15

the Individual Defendants' Motion To Dismiss as it applies to
Plaintiff's Section 1983 claim premised on the state-created
danger doctrine.

   C.   <u>Whether Plaintiff's Section 1983 Claim Against The
        Individual Defendants Based On A Failure To Train And
        The Maintenance Of Unconstitutional Customs, Policies
        Or Practice Should Be Dismissed</u>

In addition to her claim based on the state-created danger
doctrine, Plaintiff also alleges a Section 1983 claim based on
the failure to train and the maintenance of policies and
practices that resulted in a constitutional deprivation of
Plaintiff's right to liberty.  Like municipalities, supervising
employees may be held liable for the failure to train and the
maintenance of wrongful policies and practices under Section
1983.  However, there still must be an underlying violation of
the plaintiff's constitutional rights in order to sustain such a
claim.  <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 122
(1992).  Further, the Third Circuit has recognized in <u>Carter v.
City of Philadelphia</u>, 181 F.3d 339, 356 (3d Cir.), <u>cert. denied</u>,
528 U.S. 1005 (1999), that a plaintiff cannot be expected to know
what training was in place or how training procedures were
adopted without the benefit of discovery.  As with Plaintiff's
claim under the state-created danger doctrine, the Court cannot
conclude at this juncture that her allegations fail to state a
claim upon which relief may be granted.  Accordingly, the Court

16

concludes that Plaintiff should also have the opportunity to
pursue discovery with respect to her failure to train claim, and
therefore, the Court will deny the Individual Defendants' Motion
To Dismiss this claim.

## IV. Whether The Individual Defendants Are Entitled To Qualified Immunity

In addition to their previous arguments, the Individual
Defendants also raise, in the alternative, the defense of
qualified immunity.  Because the Court has concluded that
Plaintiff should have the opportunity to pursue discovery on her
claims, the Court will defer ruling on the issue of qualified
immunity.

## IV.  Whether Plaintiff's State Law Claim Should Be Dismissed

In addition to Plaintiff's Section 1983 claims, Plaintiff
also alleges state law claims pursuant to the Delaware Tort
Claims Act, 10 Del. C. § 4001 (Count III), and for violation of
the covenant of good faith and fair dealing (Count IV) against
the DOC and the Individual Defendants.  The DOC contends that
Plaintiff's claims against it under the Delaware Tort Claims Act
and for violation of the covenant of good faith and fair dealing
should be dismissed based upon the doctrine of sovereign
immunity.  The DOC also contends that Plaintiff's Count III
claims are barred by the exclusivity provision of 19 Del. C. §
2304, and that her claim for violation of the covenant of good

17

faith and fair dealing should be dismissed because the State Merit System of Personnel Administration is her sole remedy, 29 Del. C. § 5938, and she has failed to comply with the heightened pleading standards required by Rule 9(b) of the Federal Rules of Civil Procedure.  The Individual Defendants request dismissal of the state law claims based on the doctrine of supplemental jurisdiction, but also adopt the arguments of the DOC to the extent that they may be applied to the state law claims brought against the Individual Defendants.

A.    Whether The DOC Has Waived Its Sovereign Immunity With Respect To Plaintiff's Claims Based On The Delaware Tort Claims Act Alleged In Count III Of The Complaint And A Breach Of The Covenant Of Good Faith And Fair Dealing Alleged In Count IV Of The Complaint

In general, the doctrine of sovereign immunity precludes a state or state agency from being sued without its consent.  Under the Delaware Constitution, the State may only waive its sovereign immunity through an act of the General Assembly.  By the enactment of 18 Del. C. § 6511, the General Assembly stated:

> The defense of sovereignty is waved and cannot and will not be asserted as to any risk or loss covered by the state insurance program, whether same be covered by commercially procured insurance or self-insurance, and every commercially procured insurance contract shall contain a provision to this effect, where appropriate.

Plaintiff contends that this provision creates two categories of risks, those insured by commercial insurance and those which are self-insured.  Plaintiff contends that any risks not covered by

18

commercial insurance are by default, self-insured.  However,
Plaintiff offers no authority for her reading of Section 6511.
Further, the Delaware Supreme Court has interpreted Section 6511
in a manner contrary to Plaintiff's proposed reading.

For example, in Doe v. Cates, 499 A.2d 1175 (1985), the
Delaware Supreme Court concluded that the "presumptive waiver of
immunity" contained in Section 6511 expired, because the General
Assembly failed to fund the committee that was intended to
implement the legislation.  In subsequent cases, the Delaware
Supreme Court has concluded that an insurance-dependent
provision, like 18 Del. C. § 6511, does not waive sovereign
immunity where there is no insurance in place to cover the
alleged loss.  See e.g., State of Delaware Department of Health
and Social Services v. Sheppard, No. 176, 2004 WL 2850086, *1
(Del. Dec. 10, 2004).

Plaintiff contends that the Delaware Supreme Court's ruling
in Doe should be disregarded, because the Delaware General
Assembly passed 10 Del. C. § 5403 this year pertaining to the
construction and interpretation of laws.  In pertinent part,
Section 5403 provides:

> Construction and interpretation of laws.  (a)
> Delaware judicial officers may not create or
> amend statutes, nor second-guess the
> soundness of public policy or wisdom of the
> General Assembly in passing statutes, nor may
> they interpret or construe statutes and other

19

                        Delaware law when the text is clear and
                        unambiguous. . . .

Applying this section to the waiver question, Plaintiff contends

that the Doe court overstepped its boundaries by looking to the

funding mechanism of the legislation, rather than the "mindset"

of the General Assembly.

    As Plaintiff acknowledges, however, the constitutionality of

Section 5403 in light of the separation of powers is "highly

questionable." (D.I. 54 at 76). Indeed, the Governor has

requested an advisory opinion from the Delaware Supreme Court

regarding the constitutionality of this provision. Moreover, the

best indication of the legislature's intent is the language of

the statute. Indeed, Plaintiff acknowledges the priority given

to the text in statutory construction questions when she states

that the import of Section 5403 is that the legislature "has said

'we mean what we say, and don't think otherwise.'" (D.I. 54 at

76). Section 6511 provides that sovereign immunity is only

waived where the risk or loss is "covered by the state insurance

program." In the Court's view, the Delaware cases since Doe have

been consistent with the express language of Section 6511,

concluding that "coverage" only exists where insurance has been

purchased or funded for the risk or loss asserted.

    In this case, Defendants have presented the affidavit of

Deborah Lawhead, Insurance Coverage Administrator of the State of

Delaware.  Ms. Lawhead's affidavit confirms that the State of
Delaware and the Department of Correction has not purchased
insurance or appropriated any funding for insurance applicable to
the circumstances alleged in Plaintiff's Complaint.  Ms. Lawhead
also confirms that none of the commercial insurance secured for
the State during any fiscal year provides coverage for the types
of injuries alleged by Plaintiff.[5]  Plaintiff has not rebutted Ms.
Lawhead's assertions, and Plaintiff's only argument rests on the
application of Section 5403.  Because no genuine issues of
material fact exist with respect to the application of sovereign
immunity, and the Court is not persuaded by Plaintiff's argument
that Section 5403 invalidates the Delaware Supreme Court's
decisions on this subject, the Court concludes that the State of
Delaware and its agency, Defendant DOC, have not waived their
sovereign immunity for purposes of Plaintiff's claims under the
Delaware Tort Claims Act and for breach of the covenant of good

---

[5]    Ms. Lawhead's affidavit is properly considered by the
Court because the DOC has requested summary judgment in the
alternative. See Hilfirty v. Shipman, 91 F.3d 573, 579 (3d
Cir.1996) (deciding that a Rule 56 motion for summary judgment
presented in the alternative provided sufficient notice to the
non-moving party that the court may convert a Rule 12(b)(6)
motion to dismiss into a motion for summary judgment).  In
addition, Plaintiff does not dispute the application of summary
judgment standards to the DOC's sovereign immunity argument. See
Camp v. Brennan, 219 F.3d 279, 280 (3d Cir. 2000) (noting that
consideration of materials beyond the complaint converts a motion
to dismiss into a motion for summary judgment).

faith and fair dealing.  See Kopicko v. State, 2000 WL 33108936, *2 (Del. Super. Sept. 29, 2000), appeal dismissed, Kopicko v. State, 2004 WL 1427077 (Del. May 28, 2004); Marker v. Talley, 1986 WL 6769, *3-4 (Del. Super. June 11, 1986).  Accordingly, the Court will grant summary judgment in favor of Defendant DOC on Plaintiff's state law claims.

B.    Whether The Exclusivity Provision Of The Worker's Compensation Law Precludes Plaintiff's Claim Against The Individual Defendants Based On The Delaware Tort Claims Act Alleged In Count III Of The Complaint

Relying on the argument made by the DOC based on the exclusivity provision of 19 Del. C. § 2304, the Individual Defendants contend that they are entitled to dismissal of Plaintiff's claim based on the Delaware Tort Claims Act alleged in Count III of her Complaint.  Plaintiff contends that additional discovery is needed to determine whether the "dual persona" exception recognized by the Delaware Superior Court in Patton v. Simone, 1992 WL 183051 (Del. Super. July 16, 1992) applies to extend liability beyond the parameters set forth in Section 2304.

In full Section 2304 provides:

Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.

22

Under the dual persona doctrine,

> [a]n employer may become a third person, vulnerable to
> tort suit by an employee, if--and only if--he possesses
> a second persona to his status as employer that by
> established standards the law recognizes as a separate
> legal person.

Simone, 1992 WL 183051 at *3 (citing 2A Larson Workmen's

Compensation Law § 72.81 (1982)).

Construing the allegations of Plaintiff's Complaint in the

light most favorable to her, the Court concludes that Plaintiff

has not asserted the dual persona doctrine against the Individual

Defendants.  Plaintiff's argument concerning the application of

the dual persona doctrine applies only to the DOC and not to the

Individual Defendants.  Plaintiff states in her Complaint that

"Defendant State of Delaware Department of Correction occupied a

'dual persona' in that, in addition to being Plaintiff Cassie

Arnold's employer, it owed a duty to Plaintiff Arnold, as to any

member of the general public, to avoid gross negligence in the

operation of its prisons that might foreseeable result in injury

to persons."  (D.I. 1 at ¶ 120) (emphasis added).  The Court's

reading of the Complaint is supported by the argument advanced by

Plaintiff in her brief.  Specifically, Plaintiff states, "At this

pre-discovery stage of the case, it is impossible to make the

factual analysis necessary to determine whether the 'dual

persona' doctrine could establish that the defendant Department

of Correction had a dual obligation to Ms. Arnold, not merely in her status as an employee for purposes of workers' compensation, but also as the equivalent of a business invitee." (D.I. 54 at 74 (emphasis added)).

Because Plaintiff does not assert the dual persona doctrine against the Individual Defendants, the exclusivity provision of Section 2304 bars Plaintiff's claim against the Individual Defendants.[6] Kofron v. Amoco Chemicals Corp., 411 A.2d 226, 231 (1982) ("[A]ll employee actions against employers for work-related injuries based on any degree of negligence, from slight to gross, are within the exclusive coverage of the Workmen's Compensation Law and may not be maintained under the common law."); see also Precision Air Inc. v. Standard Chlorine of Delaware, Inc., 654 A.2d 403 (Del. 1995). This bar applies with equal force to Plaintiff's claims against her co-workers. Ward v. General Motors Corp., 431 A.2d 1277, 1279 (Del. Super. 1981) (stating that "suit may not be brought by one employee against another employee of the same employer for damages for a condition which is compensable under the Workmen's Compensation Law"); Lloyd v. Jefferson, 53 F. Supp. 2d 643, 689 (D. Del. 1999) (citing Ward for the proposition that Delaware workers cannot sue

_____

[6]     Plaintiff raises no argument against the application of the exclusivity provision, except for the dual persona argument raised against the DOC.

their coworkers in tort). Accordingly, the Court will dismiss Plaintiff's claim based on the Delaware Tort Claims Act against the Individual Defendants on the grounds that her claim is barred by the exclusivity provision of Section 2304.

      C.    <u>Whether Plaintiff's Claim Based On A Breach Of The Covenant Of Good Faith And Fair Dealing Alleged In Count IV Of Her Complaint Should Be Dismissed Against The Individual Defendants</u>

The Individual Defendants have adopted the DOC's arguments, in the alternative to sovereign immunity, that Plaintiff cannot establish her state law claim based on a breach of the covenant of good faith and fair dealing alleged in Count IV of her Complaint. In this regard, the Individual Defendants contend that Plaintiff's sole remedy for a breach of the covenant of good faith and fair dealing is through the State of Delaware Merit System of Personnel Administration, and Plaintiff failed to file a grievance to trigger this remedy. The Individual Defendants also contend that Rule 9(b) applies to Plaintiff's allegations in Count IV, because her claim sounds in fraud, and Plaintiff has failed to satisfy the heightened pleading requirements in Rule 9(b).

In her Answering brief, Plaintiff contends that she satisfied the grievance requirements under the Merit System and relies on <u>Merrill v. Crothall-American, Inc.</u>, 606 A.2d 96 (1991) for the proposition that she is entitled to damages where an

25

employment relationship is induced by virtue of a deception.  The Individual Defendants do not respond to Plaintiff's arguments in their Reply Brief.

Although Plaintiff states in her Complaint that her claim based on an alleged breach of the covenant of good faith and fair dealing is brought against all Defendants, it is evident from her Complaint and her Answering Brief that the claim is made against her employer, the DOC.  Plaintiff states in her complaint that she was employed by the DOC (D.I. 1 at ¶ 1), and that "[t]he shockingly unsafe conditions of employment to which Plaintiff Cassie Arnold was subjected constituted a deceptive departure from the terms and conditions of employment to which she was entitled to expect <u>and which the DOC had agreed to provide</u>, in violation of the common law Covenant of Good Faith and Fair Dealing implied to exist in all contracts of employment." (D.I. 1 at ¶ 124) (emphasis added).  Plaintiff states in her Answering Brief, "In this case Cassie Arnold was deceived by her <u>employer, the DOC</u>, in that no one told her that her work environment would be characterized by conscience-shocking security lapses." (D.I. 54 at 76) (emphasis added).  Further, the <u>Merrill</u> case upon which Plaintiff relies to establish her claim is based on a law suit brought by an employee for breach of the covenant of good faith and fair dealing by his employer, Crothall-American, Inc.

26

("Crothall") through the deceptive actions of an employee of Crothall.  The case does not establish a basis for advancing a breach of the implied covenant of good faith and fair dealing against individual employees of the employer, and Plaintiff has not provided the Court with a basis for asserting this claim against the Individual Defendants in their individual capacities. Accordingly, based on the allegations in her Complaint and the statements in her Answering Brief, the Court concludes that Plaintiff has failed to state a claim for breach of the covenant of good faith and fair dealing against the Individual Defendants, and therefore, the Court will grant the Individual Defendants' Motion To Dismiss this claim.

**CONCLUSION**

For the reasons discussed, the Court will grant the Motion To Dismiss/Summary Judgment filed by Defendant DOC.  Plaintiff's federal claims against the DOC will be dismissed, and judgment will be entered in favor of the DOC on Plaintiff's state law claims.  The Court will also grant the Motion To Dismiss filed by the Individual Defendants as that Motion applies to Plaintiff's state law claims, and deny the Motion To Dismiss filed by the Individual Defendants as it pertains to Plaintiff's Section 1983 claims.

An appropriate Order will be entered.

27